CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
APR 26 2007
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ROBERT L. TUCKER, | CASE NO. 4:06CV00047 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE[1], Commissioner of Social Security, | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | |

This challenge to a final decision of the Commissioner which denied plaintiff's July 27, 2004 protectively filed concurrent claims for a period of disability, disability insurance benefits and supplemental security income under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff was thirty-four years old on his amended alleged disability onset date, December 9, 2003[2]; had not engaged in substantial gainful activity during the

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Commissioner of Social Security as the defendant.

[2]Plaintiff originally claimed that his disability onset date was April 18, 2001. (R. 17, 66.)

relevant time period; and was insured for benefits through December 31, 2006. (R. 17, 19, 24.) The Law Judge further found that the arthritis in plaintiff's left knee and ankle are severe impairments, though not severe enough to meet or equal any listed impairment. (R. 19, 22.) The Law Judge was of the view that plaintiff's medically determinable impairments could reasonably be expected to generally produce the symptoms alleged; however, his statements concerning the intensity, duration, and limiting effects of his symptoms were "not entirely credible." (R. 23.) The Law Judge determined that plaintiff retained the residual functional capacity (RFC) to perform a reduced range of sustained work at the sedentary exertional level.[3] (R. 24.) The Law Judge also found that plaintiff could not return to his past relevant work as a chainsaw operator, a furniture assembler (nailer), a bobbin-winding machine operator/tender, or a painter in a shipyard.[4] (*Id.*) However, by application of the Medical-Vocational Guidelines ("grids") to plaintiff's exertional limitations, and by reference to testimony provided by the vocational expert (VE), the Law Judge concluded that jobs as an assembler, an inspector/sorter/grader, and a hand packer were available to him. (R. 25.) Thus, the Law Judge concluded that plaintiff was not disabled under the Act. (R. 25-26.)

Plaintiff appealed the Law Judge's decision to the Appeals Council, which found no basis in the record, or in the reasons advanced on appeal, to review the Law Judge's decision. (R. 11-13.) Accordingly, the Appeals Council denied review and adopted the Law Judge's decision as the final

---

[3]The Law Judge specifically found that plaintiff had the RFC to lift or carry at least five pounds occasionally, but no more than ten pounds; stand or walk for a total of at least one hour in an eight hour workday(not for prolonged periods of time); and sit the remainder of the time when not walking or standing. (R. 22.) The Law Judge further found that plaintiff cannot climb ladders, ropes or scaffolds, stoop or crouch, and can only occasionally climb stairs or ramps, balance, kneel or crawl. (*Id.*)

[4]The VE classified plaintiff's past relevant work as a chainsaw operator as heavy, unskilled. (R. 24.) The VE classified his other past relevant work as a furniture assembler (nailer) as medium, semiskilled; a bobbin-winding machine operator/tender as medium, unskilled; and a painter in a shipyard as medium, skilled. (*Id.*)

2

decision of the Commissioner. This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527- 404.1545 and 416.927-404.945; *Hayes v. Sullivan*, 907 F. 2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F. 2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. 20 C.F.R. §§ 404.1527 and 416.927; *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In the "Memorandum Of Points And Authorities" filed in support of his motion for summary judgment, plaintiff argues that the hypothetical presented to the VE legally was inadequate in that it failed to include all of his limitations. (Plaintiff's Brief, pp. 12-15.) Plaintiff is of the view that, initially, the Law Judge failed to include his need to "repeatedly utilize the bathroom." (Pl's Brief, pp. 12-13.) In support of this argument, plaintiff refers to his own "credible" testimony relating to such need which he offered before the Law Judge, as well as the record evidence showing he has been diagnosed with and treated for Crohn's disease. (Pl's Brief, p. 13.) The undersigned does not find plaintiff's argument persuasive on the record before the court.

Lawrence W. Comerford, M.D., plaintiff's primary treating physician for his gastrointestinal condition during the relevant time period, examined and evaluated plaintiff on June 21, 2004. (R. 351-352.) Plaintiff reported that his bowel movements had been "normal," and that "his appetite is good, he eats all the time." (R. 351.) Dr. Comerford opined that: plaintiff had done well since his April 9, 2004 surgery; he was in "no acute distress"; his primary complaint was not gastrointestinal;

3

and from a gastrointestinal standpoint, he was doing "very well," with the exception of some abdominal pain. (R. 351.)

Eugene Foley, M.D., the surgeon who performed plaintiff's April 9, 2004 colostomy take-down, examined and evaluated him on May 3, 2004. (R. 332-334, 355-356.) Dr. Foley noted that plaintiff reported "doing well," experiencing "minimal" pain, and that his bowel function had slowed over time. (R. 355.) Dr. Foley concluded that plaintiff was in no apparent distress, was doing "very well," and would need to return only on an as needed basis. (*Id.*)

Next, plaintiff argues that the Law Judge failed to include for consideration by the VE certain limitations found by his "treating" orthopaedic physician, Linda F. Staiger, M.D. Specifically, plaintiff argues the Law Judge's hypothetical failed to include the following limitations: weight bearing causes a significant increase in his pain; his pain medication cause drowsiness[5]; he is able to stand less than two hours in an eight hour workday; he would need a job permitting at will position shifts from sitting, standing, or walking; he would need a job allowing "ready access" to a restroom; he would have "good days and bad days"; and he likely would miss more than four days of work per month. (Pl's Brief, pp. 13-14.)

It is noteworthy that although plaintiff contends that the Law Judge erred in failing to give proper weight to the findings of Dr. Staiger, whom plaintiff classifies as a "treating" orthopaedic physician, the record reflects that Dr. Staiger evaluated plaintiff *only twice*. (R. 346-347, 417-420.) Therefore, Dr. Staiger had no long term treatment relationship with plaintiff and cannot be viewed as the kind of "treating physician" whose opinions are to be given great weight and special consideration because they reflect a longitudinal view of the plaintiff's progress. *See* 20 C.F.R. §

---

[5]Dr. Staiger's records do not identify the pain medication which plaintiff claims causes him to experience drowsiness.

4

404.1527(d).

Following Dr. Staiger's "orthopaedic initial visit/evaluation" dated March 3, 2005, she opined that plaintiff suffered arthritis[6] of the left knee and ankle. (R. 417.) In a preprinted, fill-in-the-blank checklist, Dr. Staiger offered bare findings that: weight bearing caused a significant increase in plaintiff's pain; plaintiff frequently took pain medications which cause him drowsiness; plaintiff could never stand continuously; plaintiff could not carry less than ten pounds; he needed a job permitting "ready access" to a restroom[7]; his impairments are likely to cause him to experience "good days" and "bad days;" his impairments likely would cause him to miss work more than four times a month; and plaintiff's overall prognosis is "poor." (R. 417-420.)

The Law Judge did not fully credit these findings rendered after the "initial visit/evaluation," and there is nothing in the balance of the extant record that would suggest he was compelled to do otherwise. Dr. Staiger's findings are not supported by the objective medical findings or the record as a whole. Although plaintiff's left knee and both ankles were surgically repaired in 1986 following a motor vehicle accident, the record reveals that he received only conservative treatment during the relevant time period. (R. 157.) For instance, on December 8, 2003, and June 21, 2004 he was taking only over the counter pain medications. (R. 351, 368.) On January 13, 2004, March 29, 2004, April 15, 2004, December 13, 2004, and November 18, 2005 plaintiff was *not taking any pain medication at all*. (R. 315, 330, 340, 360, 366.)

Finally, plaintiff argues that when the VE was asked to consider certain limitations not

---

[6]ANA and rheumatoid arthritis factor tests were negative. (R. 351.)

[7]At one point in the March 3, 2005 form Dr. Staiger notes that plaintiff would need "ready access to a bathroom." (R. 419.) However, on the same page of the form, when asked if he would need to take unscheduled restroom breaks, she responded that the question was not applicable to her assessment because she was "not treating for this." (*Id.*)

5

included in those offered by the Law Judge, but which plaintiff believes should have been included in the assessment of his residual functional capacity, the VE opined there were no jobs available. (Pl's Brief, p. 15.) When the Law Judge allowed plaintiff's counsel to examine the VE after he had rendered an opinion that jobs were available to the plaintiff based on the Law Judge's questions, the following colloquy occurred:

> [Plaintiff] [I]n the jobs you've identified, these light, unskilled jobs, what is the -- in terms of monthly, what would be the number of absences that the employer would routinely allow a person performing one of those jobs?
>
> [VE] Approximately one time per month.
>
> [Plaintiff] So, if a person, for example, due to medical condition, was unable to attend work more than roughly [INAUDIBLE] one time a month, he would not be able to successfully perform those jobs?
>
> [VE] They would not be able to sustain employment for either one of those jobs.

(R. 511-512.)

The significance of this exerpt is that, while plaintiff argues the Law Judge omitted various limitations in his examination of the VE, after being given an opportunity to cross examine the VE, counsel chose to offer *only one* additional limitation which related to attendance. The undersigned cannot say that the plaintiff's evidence compelled the Law Judge to find the existence of the limitations plaintiff claims in this case. Accordingly, the weight the Law Judge assigned the evidence as a whole is supported by substantial evidence, and the hypothetical inquiry is not legally inadequate. *See Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989).

For these reasons, it is RECOMMENDED that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United

6

Case 4:06-cv-00047-JLK-BWC   Document 17   Filed 04/26/07   Page 6 of 7   Pageid#: 66

States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

April 26, 2007
Date